**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

GLYNDA WHITE                                                                                    PLAINTIFF

v.                                    **Case No. 3:12-cv-00062-KGB**

RICE BELT TELEPHONE CO., INC.                                                  DEFENDANT

_____

RICE BELT TELEPHONE CO., INC.                          THIRD-PARTY PLAINTIFF

v.

ROBERT C. PIERSON                                      THIRD-PARTY DEFENDANT

<u>ORDER</u>

Plaintiff Glynda White brings this action against defendant Rice Belt Telephone Co., Inc. ("Rice Belt") arising out of Rice Belt's cancellation of her retiree Medicare supplemental insurance benefits.  Ms. White originally brought this action in state court as a claim for breach of contract.  Rice Belt removed the case to this Court, asserting that Ms. White's claim arises under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461.  Rice Belt subsequently answered Ms. White's complaint and asserted a third-party complaint against Robert C. Pierson for indemnification (Dkt. No. 7).  The case is now before the Court on Ms. White and Rice Belt's briefing as ordered in the Court's ERISA scheduling order (Dkt. No. 10). For the reasons discussed below, the Court finds that the record is incomplete in this case and directs that the parties supplement the record with written plan documents for the purported ERISA plan at issue.

**I.      Background**

Ms. White is a former employee of Rice Belt.  She alleges that, on February 5, 2010, she and Mr. Pierson, the president of Rice Belt at the time, entered into a contractual agreement

guaranteeing the funding of Ms. White's supplemental insurance after her retirement.   The agreement is drafted in the form of a "letter of intent to retire" setting forth Ms. White's proposed terms of retirement, with Mr. Pierson's signature of acceptance of the letter and its terms (hereinafter the "retirement agreement") (Dkt. No. 12-1, at 1).   The relevant portion of the retirement agreement states, "Further, per discussion with Mr. Pierson, my company paid NTCA Medical Insurance will remain in effect as is until July 31, 2010, and I understand that at that time Retiree Medicare Supplemental Insurance will become effective for me only, to be fully funded by Rice Belt Telephone Co., Inc."  (Dkt. No. 12-1, at 1).

The pleadings indicate that on October 19, 2010, Mr. Pierson entered into a Stock Purchase Agreement ("SPA") to sell Rice Belt Holdings, Inc., and its wholly owned subsidiary, Rice Belt, to Smithville Holding Co., Inc. ("Smithville").   On December 20, 2010, Ms. White emailed Mr. Pierson to ask what effect the sale of Rice Belt would have on "the Retiree Medicare Supplement" (Dkt. No. 12-1, at 2).   Mr. Pierson responded there would be no effect and stated that "they are keeping everything the same" (*Id*.).   Sometime thereafter, the new president of Rice Belt, Darby A. McCarty, executed a "written action of the president of Rice Belt Telephone Company, Inc." to terminate Rice Belt's "Senior Medical Insurance Plan" as of the close of business December 31, 2011 (Dkt. No. 12-1, at 3).   Ms. White was notified of the termination via letter dated December 30, 2011 (*Id*. at 4).   Ms. White asserts that the cancellation of her retiree Medicare supplemental insurance benefits constitutes breach of contract.   She seeks damages for the value of these benefits for the remainder of her life expectancy.   Rice Belt has filed a third-party complaint against Mr. Pierson, asserting that he represented and warranted in the SPA that all "Benefit Plans" had been disclosed and provided to Smithville as required by the SPA (Dkt. No. 7).

## II.      Discussion

Ms. White in her brief argues that this case is a simple breach-of-contract action and that the issue of breach is undisputed.  She requests that the Court either remand this case to state court or award judgment in the amount sought in her complaint.  To the extent she addresses ERISA, she argues the plan administrator's decision to terminate benefits is not entitled to deference because the administrator failed to conduct any review to trigger this deference.  Rice Belt in its response brief maintains its position that this case is governed by ERISA and asks the Court to enter judgment in its favor on the ground that Ms. White has failed to meet her burden of proving an intent to vest lifetime retiree benefits.  For the reasons discussed below, the Court determines that the record is too incomplete for the Court to rule on either issue.  The Court directs the parties to supplement the record.

### A.      ERISA Preemption

ERISA is intended to provide a uniform regulatory regime over employee benefit plans and includes "expansive pre-emption provisions, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (internal quotations and citations omitted).  "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  *Id*.

Existence of a "plan" is a prerequisite to ERISA jurisdiction.  *Bannister v. Sorenson*, 102 F.3d 632, 636 (8th Cir. 1996).  The existence of an ERISA plan is a mixed question of law and fact.  *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254, 256 (8th Cir. 1994).  "No particular formality is required to show the existence of a plan."  *Kreutzer v. Coorstek, Inc.*, No.

4:08CV00571 BSM, 2008 WL 4079319, at *2 (E.D. Ark. Aug. 28, 2008) (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982)). "In determining whether a plan, fund or program (pursuant to a writing or not) is a reality[,] a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Donovan*, 688 F.2d at 1373. The Eighth Circuit has adopted the *Donovan* test for determining the existence of an ERISA plan. *See Harris v. Arkansas Book Co.*, 794 F.2d 358, 360 (8th Cir. 1986). The *Donovan* court summarized the test as follows:

> [A] summary, a "plan, fund, or program" under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits. To be an employee welfare benefit plan, the intended benefits must be health, accident, death, disability, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits; the intended beneficiaries must include union members, employees, former employees or their beneficiaries; and an employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain the plan, fund, or program.

*Donovan*, 688 F.2d at 1373.

No single action in itself necessarily constitutes the establishment of a plan. *Id.*; *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 629 (8th Cir. 2001). Rather, "an ERISA plan must embody a 'set of administrative practices.'" *Johnston*, 241 F.3d at 629 (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11-12 (1987)).

The record in the instant case is incomplete as to the existence of a plan. The stipulated record contains only the retirement agreement attached to Ms. White's complaint, emails between Ms. White and Mr. Pierson, Rice Belt's written action terminating its senior medical insurance plan, and the letter to Ms. White informing her of the termination of the senior medical insurance plan (Dkt. No. 12). There are no plan documents establishing a set of administrative

practices.  The only document in the record that is suggestive of a plan is Rice Belt's written action terminating its senior medical insurance plan in that this document refers to a specific plan and identifies in general terms the intended benefits and beneficiaries—supplemental health benefits for "certain of the Company's retirees eligible for Medicare" (Dkt. No. 12-1, at 3).  The purchase of insurance alone does not establish a plan, but "the purchase of a group policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established."  *Donovan*, 688 F.2d at 1373 (footnote omitted).

Based on the stipulated record before the Court, the Court finds sufficient evidence of the establishment of an ERISA plan for the Court to exercise jurisdiction in this case at this time.  For the same reason, the Court at this time will deny Ms. White's request to remand this action to state court.  However, the Court will revisit jurisdiction and preemption, if necessary, after the parties supplement the record.

### B.    Whether The Benefits Vested

Employee benefit plans under ERISA are divided into two categories—welfare plans and pension plans.  *See* 29 U.S.C. § 1002(1), (2)(A).  Assuming the existence of a plan for supplemental health insurance, the plan here constitutes an employee welfare plan.  *Id.*, § 1002(1).  ERISA welfare plans are not subject to the specific vesting requirements that apply to ERISA pension plans.  "'Therefore, an employer may unilaterally modify or terminate medical benefits at any time absent the employer's contractual agreement to the contrary.'"  *Halbach v. Great-W. Life & Annuity Ins. Co.*, 561 F.3d 872, 877 (8th Cir. 2009) (quoting *Jensen v. SIPCO, Inc.,* 38 F.3d 945, 949 (8th Cir. 1994)).  "It is possible for welfare benefits to vest, however, if a promise to provide vested benefits is incorporated in some fashion into the formal written ERISA plan."  *Id.* (citing *Hughes v. 3M Retiree Med. Plan*, 281 F.3d 786, 790 (8th Cir. 2002)).

"Whether such benefits are vested, then, is a matter of private contract and our inquiry begins with the written Plan documents." *Id.*

The plaintiff bears the burden of proof as to whether vesting language exists in order to confer a vested right to employee welfare benefits. *Halbach*, 561 F.3d at 877; *Hughes*, 281 F.3d at 790. Rice Belt argues that Ms. White has declined to take on her burden to show any vesting language. In her briefing, Ms. White contends that the issue of breach is clear based on the retirement agreement. In addition, although the record is stipulated, Ms. White takes issue with Rice Belt not including in the record the plan itself. This Court determines that, to consider fully the issue of vesting, the Court must examine the written plan documents. The Court directs the parties to supplement the record with the written plan documents for the purported ERISA plan at issue in this case.

### III.   Conclusion

The Court finds sufficient evidence at this time of the existence of an ERISA plan for the Court to exercise jurisdiction over this case. However, the Court determines that the record is incomplete and directs the parties to supplement the record. Within 30 days from the date of this Order, the parties shall file a supplemental administrative record containing written plan documents. Ms. White shall file a supplemental brief within 21 days thereafter, and Rice Belt shall file a supplemental brief within 14 days after Ms. White files her supplemental brief.

SO ORDERED this the 28th day of October, 2014.

Kristine G. Baker
United States District Judge